**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:19-cv-00238-FL**

| | |
|---|---|
| **PRIME COMMUNICATIONS, L.P.,**<br><br>                   **Plaintiff,**<br><br>v.<br><br>**RAGSDALE LIGGETT, P.L.L.C.,**<br><br>                   **Defendant.** | **RESPONSE TO PLAINTIFF'S SECOND MOTION TO AMEND COMPLAINT** |

This matter is before the Court on Plaintiff Prime Communications, L.P.'s Motion for Leave to File Second Amended Complaint, filed on July 9, 2019. [D.E. 46]. This Motion was filed nineteen days after Defendant filed its Renewed Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and supporting memorandum on June 20, 2019. [D.E. 36, D.E. 37]. Defendant incorporates herein by reference all arguments made within its prior memorandum.

## RELEVANT FACTUAL HISTORY

Plaintiff initially filed its Complaint on December 13, 2018 in the District Court for Harris County, Texas. [D.E. 1, Ex. 5]. Plaintiff's claims arise out of Defendant's legal representation of Plaintiff in a North Carolina lawsuit filed by former and current employees of Plaintiff pursuant to the Fair Standards Labor Act and the North Carolina Wage and Hour Act. In its original Complaint, Plaintiff asserted claims for breach of contract, legal malpractice and a declaratory judgment.

Defendant moved to dismiss Plaintiff's original complaint on February 4, 2019. [D.E. 3]. That motion was fully briefed by Defendant. [D.E. 4]. In response to Defendant's motion to dismiss, Plaintiff moved to amend its original complaint on March 4, 2019. [D.E. 12]. Plaintiff's

first amended complaint added a claim for breach of fiduciary duty and included substantially more factual allegations in support of its claims. [D.E. 22]. Plaintiff's motion to amend was allowed by the Court on March 7, 2019. [D.E. 21].

This matter was transferred to the present venue on June 6, 2019 and, as a result, Defendant's pending motion to dismiss Plaintiff's first amended complaint was denied as moot. [D.E. 32]. Following transfer, Defendant renewed its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [D.E. 36]. That motion was also fully briefed by Defendant. [D.E. 37]. Plaintiff now seeks leave to amend its Complaint for a second time.

Plaintiff's proposed amended complaint seeks to add certain factual allegations, including that it has settled the underlying action, as well as claims for breach of the duty of good faith and fair dealing and constructive fraud. [D.E. 46]. In addition, Plaintiff now seeks to recover punitive damages and "disgorgement and/or any equitable relief available under the law based on this Court's findings and/or any jury's findings." [Id.].

## ARGUMENT

Seven months after filing its initial complaint, and more than two years after Defendant was allowed to withdraw from representation in the underlying litigation, Plaintiff is still circling its theory of Defendant's liability. Plaintiff does not explain why it could not have included the bulk of its amended allegations and claims in either of its first two complaints. The majority of Plaintiff's proposed amendments concern matters that occurred more than two years ago—and, in some cases, six years ago, and none address the deficiencies in Plaintiff's claims. The only relevant development since the filing of Plaintiff's initial complaint is that Plaintiff has now reached a settlement as to the remaining North Carolina Wage and Hour Act claims in the underlying litigation. This alleged settlement, described at paragraph 24 of Plaintiff's proposed

second amended complaint, rather than supporting a claim for damages, is a bar to Plaintiff's malpractice claims.

Defendant has twice moved to dismiss Plaintiff's complaints and fully briefed those motions. For the second time, Plaintiff now attempts to delay a ruling on Defendant's motion by filing yet another amended complaint. Because these proposed amendments do not rectify the insufficiencies of the prior pleadings, and do not otherwise plead "enough facts to state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), Plaintiff's second motion to amend should be denied. *See Cooper v. N. Carolina State Bd. of Elections*, No. 5:08-CV-423-D, 2009 WL 9081691, at *5 (E.D.N.C. June 12, 2009).

I. STANDARD OF REVIEW

"[T]he function of Rule 15(a) is generally 'to enable a party to assert matters that were overlooked or *were unknown to him at the time he interposed his original complaint* or answer.'" *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974) (quoting C. Wright and A. Miller, 6 Federal Practice and Procedure: Civil § 1473, at 375 (1969)) (emphasis added). The Fourth Circuit has stated that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). Prejudice to the opposing party "will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427–28 (4th Cir. 2006). An amended complaint is futile if it cannot withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Leave to amend may also be denied on the basis of undue delay or repeated failure to cure deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Joy*

*v. Countrywide Fin. Corp.*, No. 5:10-CV-218-FL, 2011 WL 3652697, at *3 (E.D.N.C. Aug. 19, 2011).

II.  PLAINTIFF'S STATED JUSTIFICATIONS FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT FAIL.

As noted above, the only changed circumstance since the filing of this lawsuit is that Plaintiff has reached a settlement as to the claims remaining in the underlying litigation. Plaintiff argues that this amendment addresses Defendant's argument in support of its motion to dismiss that it had failed to allege facts to plausibly show damage resulted from any purported malpractice. [D.E. 48, p. 7]. Plaintiff misunderstands Defendant's argument and North Carolina law on this point: to support the essential elements of proximate cause and damage, Plaintiff must allege and prove that "but for" the attorney's alleged negligence, Plaintiff would have prevailed in the law suit. *Rorrer v. Cooke*, 313 N.C. 338, 362, 329 S.E.2d 355, 370 (1985). North Carolina's courts refer to this as the "case within a case" rule. *Young v. Gum,* 185 N.C. App. 642, 646, 649 S.E.2d 469, 473 (2007). By this amendment, Plaintiff still does not seek to allege that Defendant committed errors that prevented it from ultimately prevailing at trial.

Rather, Plaintiff now alleges that after retaining new counsel, it chose to settle the case. [D.E. 48, p. 11]. Under North Carolina law, this constitutes an election of remedies that bars Plaintiff's claims. A legal malpractice plaintiff may not recover damages based on the allegation that a settlement reached in the underlying litigation would have been more or less favorable but for the attorney's negligence. *See, e.g., Douglas v. Parks*, 68 N.C. App. 496, 498–99, 315 S.E.2d 84, 85–86 (1984); *Stewart v. Herring*, 80 N.C. App. 529, 531, 342 S.E.2d 566, 567 (1986); *Danius v. Rodgers,* 720 S.E.2d 460 (N.C. Ct. App. 2011) (election of remedies barred legal malpractice claims alleging settlement would have been more favorable but for attorney's mishandling of discovery); *Armstrong & Armstrong, P.A. v. Rhodes*, 176 N.C. App. 407, 626 S.E.2d 876 (2006)

(election of remedies barred legal malpractice claims alleging divorce settlement would have been more favorable but for attorney's negligence).

*Stewart* is particularly informative for present purposes. There, as here, the plaintiff alleged that she was forced to enter into an unfavorable alimony agreement based on the negligence of her attorney. *Stewart*, 80 N.C. App. at 531, 342 S.E.2d at 567. The Court of Appeals held, based on the fact that the plaintiff entered into a settlement agreement in the underlying action, the plaintiff was barred from pursuing her malpractice claim against the defendant-attorney. *Id*. The Court further noted, "[t]his is so even if the settlement the plaintiff is able to make on the original claim is not as good as it would have been if there had been no wrongful action by the third party." *Id*. As here, the plaintiff advanced the argument in *Stewart* that she was attempting to mitigate her damages by entering into the settlement agreement. *Id*. The Court squarely rejected that argument based on prior precedent and affirmed the trial court's dismissal of her malpractice claim. *Id*.

Plaintiff's other justification for this amendment is its concession that North Carolina law applies to its claims. According to Plaintiff, amendment to add claims for breach of the duty of good faith and fair dealing and constructive fraud is appropriate because:

> Texas law does not recognize a claim for breach of the duty of good faith and fair dealing. North Carolina law does. Similarly, Texas law does not recognize constructive fraud based on an intentional breach of fiduciary duty. North Carolina law does.

[D.E. 48, p 8).

This is simply not the case. On the facts of the present case, North Carolina and Texas law are nearly identical with respect to claims for breach of the duty of good faith and fair dealing and constructive fraud.

First, Texas *does* recognize a cause of action for breach of the duty of good faith and fair dealing in the case of certain "special relationships." *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), *modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex.1991). Texas courts have specifically held that the attorney-client relationship is the sort of special relationship that gives rise to a duty of good faith and fair dealing. *See Gen. Motors Acceptance Corp./Crenshaw, Dupree & Milam, L.L.P. v. Crenshaw, Dupree & Milam, L.L.P./Gen. Motors Acceptance Corp.*, 986 S.W.2d 632, 636 (Tex. App. 1998) ("It is well-established that an attorney-client relationship is an agent-principal relationship. Inherent in any agency relationship is the fiduciary duty an agent owes to his or her principal. *These duties include a duty of good faith and fair dealing.* The fiduciary relationship exists between attorneys and clients as a matter of law.") (internal citations omitted) (emphasis added); *see also Smithart v. Sweeney,* No. 05-97-01901-CV, 2001 WL 804492, at *4 (Tex. App. July 18, 2001) ("A fiduciary duty is one that, at a minimum, *imposes upon the fiduciary a duty of good faith and fair dealing* and often requires the fiduciary to place the interest of the other party before his own. Certain formal relationships, *such as attorney-client*, trustee-beneficiary, agent-principal, partners, and joint venturers, create a fiduciary duty as a matter of law.") (internal citations omitted) (emphasis added).

North Carolina law and Texas law are also consistent with respect to claims for constructive fraud. Under Texas law, "[c]onstructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. It does not require an intent to defraud." *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App. 2004) (internal citations omitted); *see also In re Estate of Kuykendall*, 206 S.W.3d 766, 770 (Tex. App. 2006) ("In constructive fraud, however, the actor's intent is irrelevant. Constructive fraud encompasses

those breaches that the law condemns as 'fraudulent' merely because they tend to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial.") (internal citations and quotations omitted). As noted in Plaintiff's own brief, the same is true in North Carolina where, "[c]onstructive fraud is presumed from the breach of a fiduciary duty; it does not require intentional deception as an essential element." *Bumgarner v. Tomblin*, 63 N.C. App. 636, 641, 306 S.E.2d 178, 182 (1983); *see also Miller v. First Nat. Bank of Catawba Cty.*, 234 N.C. 309, 316, 67 S.E.2d 362, 367 (1951) ("Constructive fraud differs from active fraud in that the intent to deceive is not an essential element, but it is nevertheless fraud though it rests upon presumption arising from breach of fiduciary obligation rather than deception intentionally practiced.").

Simply put, Plaintiff could have raised these same claims more than seven months ago when it filed its initial complaint or when it filed its first amended complaint. Plaintiff neglected to do so without justification and has delayed the present litigation. Plaintiff otherwise offers no explanation for the delay in seeking to add the present factual allegations and claims.

III.     PLAINTIFF'S AMENDED FACTUAL ALLEGATIONS ARE FUTILE.

Plaintiff's second amended complaint fails to address the most fundamental deficiency contained in its prior pleadings—there are no factual allegations that plausibly show any damage or harm proximately caused by the alleged actions of Defendant. Instead, Plaintiff continues to allege Defendant made certain errors in the course of the underlying litigation, but does not allege that it did not, or could not, have prevailed as a result of those errors.

As discussed above and in Defendant's memorandum in support of its motion to dismiss the first amended complaint, legal malpractice claims follow traditional tort principles, requiring proof of causation between the alleged wrongful act and the plaintiff's injury. *Royster v.*

*McNamara*, 218 N.C. App. 520, 525, 723 S.E.2d 122, 126 (2012). "A plaintiff alleging a legal malpractice action must prove a "case within a case," meaning a showing of the viability and likelihood of success of the underlying action." *Formyduval v. Britt*, 177 N.C. App. 654, 658, 630 S.E.2d 192, 194 (2006).

In its first amended complaint, Plaintiff alleged Defendant committed malpractice by failing to timely petition for permission to appeal the class certification order in the underlying litigation. In view of the fact that such a claim is clearly barred by the applicable statutes of repose and limitation, Plaintiff now seeks to add additional allegations of negligence. These include the alleged failure to: present certain evidence and defenses in conjunction with a motion for summary judgment; depose experts; assert applicable affirmative defenses; prepare certain witnesses on key issues; and obtain testimony from a former Prime employee, Angela Dunlap.

In spite of Plaintiff's efforts, the same deficiency remains. Assuming for the sake of argument that these instances might amount to negligence, Plaintiff's second amended complaint is devoid of any allegations concerning the "viability and likelihood of success of the underlying action" or any damage proximately caused to Plaintiff by the alleged negligence. There is likewise no allegation of how any of these alleged failures prevented Plaintiff from prevailing at trial. These alleged failures cannot be adequately pled in a vacuum, standing alone, without some indication of the resultant harm required under North Carolina law to support Plaintiff's claims. Accordingly, Plaintiff's attempt to amend its malpractice claim is futile.

  a. *Defendant's alleged failure to present certain evidence and defenses at summary judgment.*

Plaintiff now seeks to allege that in March 2018, Judge Howard entered an order in the underlying litigation "largely denying" its motion for summary judgment, because Defendant failed to provide "pertinent evidence and arguments." [D.E. 48-3, p. 9]. As the actual Order

shows, however, much of the case was resolved in Plaintiff's favor at summary judgment. [5:12-CV-69, D.E. 486].[1] By the time the summary judgment order was entered, the FLSA claims had all been resolved, leaving only the NCWHA claims pending for determination. [Id., p 1-2]. Judge Howard concluded that Plaintiff was entitled to summary judgment as to any NCWHA claims arising from deductions made to commissions for sales after November, 2013 [Id., p 13-14], as well as the plaintiffs' claims for commissions and bonuses from revenue generated by "Subscriber Management Fees." [Id., p 14-17]. The only remaining claims were the NCWHA claims arising from deductions made to commissions for sales prior to November, 2013. On those claims, Judge Howard did not grant summary judgment against Plaintiff; rather, as Plaintiff concedes, he merely concluded that there were disputed factual issues that would have to be resolved at trial. [Id., p 13-14].

It is axiomatic that a District Court's denial of a motion for summary judgment is interlocutory. *Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995). Such a denial does not preclude a party's ability to present evidence and defenses at trial. Because the District Court's ruling did not prejudice its right to present its evidence at trial, Plaintiff cannot plausibly claim that could not have ultimately prevailed in the litigation because of Defendant's alleged failure to present certain evidence and arguments at summary judgment. Further, Plaintiff does not describe how the inclusion of the omitted evidence and

---

[1] Courts may consider documents referenced in the complaint and documents "integral to and explicitly relied on in the complaint if the plaintiffs do not challenge [the document's] authenticity." *Crispin v. BAC Home Loans Servicing, LP*, No. 5:11-CV-375-FL, 2011 WL 6294319, at *3 (E.D.N.C. Dec. 15, 2011) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.2004); *see also Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir.2009) (in considering motion to dismiss, court can take judicial notice of matters of public record as well as documents attached to a motion to dismiss as long as they are integral to the complaint and authentic).

arguments would have altered this Court's decision or that the motion would have been allowed in its entirety but for the alleged omissions.

To the extent Plaintiff wished to present any omitted evidence and arguments to the Court at trial, it remained free to do so. If this evidence would have been sufficient to support summary judgment, it would have similarly supported a motion for directed verdict. As our Courts have observed, "[t]he standard of review for a directed verdict is essentially the same as that for summary judgment. When considering a directed verdict on review, this Court must establish "whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury." *Nelson v. Novant Health Triad Region, L.L.C.*, 159 N.C. App. 440, 442, 583 S.E.2d 415, 417 (2003) (citing *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991). Rather than test the strength of its evidence, Plaintiff elected to settle those claims. Plaintiff cannot satisfy the "case within a case" requirement based upon Defendant's purported failure to present evidence or arguments at summary judgment. Amendment to include these allegations is futile.

  *b. Defendant's alleged failure to depose experts.*

Similarly, Plaintiff seeks to generally allege that Defendant failed to depose the plaintiffs' expert in the underlying litigation. Again, there is no allegation as to how this purported failure prevented Plaintiff from prevailing on a meritorious defense. Plaintiff's proposed amendment does not plausibly address whether or why it could not prevail because this expert was not deposed during the period of Defendant's representation. While Plaintiff seeks to allege that a deposition would have determined the expert's opinions and the data and information he relied upon, Rule 26 of the Federal Rules of Civil Procedure required the production of a written report from any testifying expert concerning the scope of the expert's opinions and the bases therefor. Further,

while Plaintiff's amendment would allege that the request of its new counsel to depose was denied because "discovery had closed long ago," the record in the underlying case shows that this request was not made until February 28, 2019, more than seventeen months after Defendants were permitted to withdraw as counsel, and eighteen months after its new counsel appeared in the case. [5:12-cv-69, D.E. 336, 338, 350, 542]. Thus, any allegation that Defendant failed to depose plaintiffs' expert does not plausibly show that it proximately caused any harm to Plaintiff as required under North Carolina law.

    c. *Defendant's alleged failure to assert applicable affirmative defenses.*

Plaintiff's second amended complaint specifically alleges that the deadline to seek amendment of pleadings, in order to alleged additional affirmative defenses, expired in September of 2012. Any claim for breach of contract, malpractice or breach of fiduciary duty premised on the alleged failure of Defendant to seek amendment of the pleadings is necessarily time-barred by the applicable statutes of limitations and repose. *See* N.C.G.S. § 1-15(c); N.C.G.S. § 1-52; *Sharp v. Teague*, 113 N.C. App. 589, 592, 439 S.E.2d 792, 794 (1994). *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) ("Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied").

Further, Plaintiff does not allege how the failure to include these affirmative defenses resulted in damage to it. Instead, Plaintiff generally alleges that a later attempt to amend the pleadings was denied as untimely, but fails to allege that these affirmative defenses had merit or were otherwise necessary to a defense of the underlying litigation.

    d. *Defendant's alleged failure to prepare certain witnesses on key issues and to secure testimony of Angela Dunlap.*

Plaintiff's proposed allegations do not provide any information concerning which witnesses were improperly prepared and any issues on which they were unprepared. More

importantly, Plaintiff does not allege how any failure by Defendant to prepare certain "witness on key issues" impacted their success in the underlying litigation or otherwise caused damage to Plaintiff. Plaintiff does not allege that these witnesses gave false, inaccurate or incomplete testimony on any issue because of any improper preparation, or that any problem with their deposition testimony could not have been addressed at trial.

In the same fashion, Plaintiff alleges Defendant failed to "secure any testimony" from Angela Dunlap, who was deposed twice. The nature or import of any testimony that Ms. Dunlap did not provide is never described. Further, there is no allegation that any additional necessary testimony by Ms. Dunlap testimony could not have been presented at trial pursuant to a subpoena or voluntarily. Indeed, as Plaintiff alleges, at the time that Ms. Dunlap testified in her deposition, she was no longer employed by Plaintiff. Presumably, she could similarly be available for testimony at trial. Thus, Plaintiff's new allegations do not plausibly allege facts that would support a claim that Plaintiff did not prevail in the underlying litigation because of Defendant's failure to ask her additional, unidentified questions during her deposition.

IV. AMENDMENT OF PLAINTIFF'S BREACH OF CONTRACT CLAIM IS FUTILE.

Plaintiff seeks to amend its breach of contract claim to make minor grammatical changes to its principal allegations and to include an allegation that it is entitled to recover fees paid to attorneys after Defendant's withdrawal and the amount paid to settle the North Carolina Wage and Hour Act claims in the underlying litigation. Plaintiff's breach of contract claim remains premised on the allegations Defendant failed to use its best efforts in defense of Plaintiff, which are addressed above, and Defendant breached the Agreement by withdrawing from representation.

Defendant's withdrawal from representation does not represent a breach of the parties' Malpractice Settlement Agreement ("Agreement").[2] The Agreement does not prohibit withdrawal, does not address contingencies related to conflicts and does not require Defendant to remain as counsel for Plaintiff throughout the pendency of the underlying litigation. Further, as discussed in Defendant's prior memorandum in support of its motion to dismiss Plaintiff's first amended complaint, this Court previously determined that good cause existed to justify Defendant's withdrawal and allowed Defendant's motion to withdraw. [5:12-cv-69, D.E. 350]. Accordingly, the allegation Defendant withdrew from representation based on a conflict regarding representation does not adequately allege Defendant breached any term of the Agreement. *See Babakaeva v. Wilson*, No. 4:09CV58, 2010 WL 11530667, at *5 (E.D. Va. Sept. 22, 2010) (plaintiff's assertion attorney withdrew prematurely from representation did not support "a cause of action for breach of contract or any tort as a matter of law" where representation Agreement did not specify a duration of representation).

The Agreement provides, in pertinent part, as follows:

> As a matter of professional courtesy, Ragsdale Liggett, PLLC ("Ragsdale") agrees that any legal fees for this matter that exceed the available legal defense costs available under any policy of insurance applicable to this matter maintained by Prime Communications, L.P. ("Client") will be waived so that the Client does not incur any legal expenses *from Ragsdale* in excess of available insurance coverage. (emphasis added).

The Agreement does not provide that Defendant would continue to represent Plaintiff following the exhaustion of any available insurance proceeds or ensure Plaintiff would not have to hire and pay replacement counsel in the event of Defendant's withdrawal. Instead, the Agreement provides Plaintiff would not receive any legal expenses from Ragsdale in excess of

---

[2] This Agreement has been previously filed with the Court. [D.E. 14, Ex. A].

available insurance coverage. There is no allegation Plaintiff received any legal expenses from Ragsdale in excess of available insurance coverage. The fact Plaintiff had to hire and pay replacement counsel upon Defendant's withdrawal goes beyond the scope of the Agreement and therefore does not plausibly state a claim for breach of the Agreement.

V. PLAINTIFF'S ADDITIONAL CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING FAILS TO PLAUSIBLY STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the Agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (emphasis added). Here, Plaintiff alleges Defendant breached the implied covenant of good faith and fair dealing by "manufacturing a reason to 'withdraw' from the case" thereby depriving Plaintiff of its expected benefit under the parties' Agreement, free legal services.

Plaintiff's allegation Defendant manufactured a conflict in order to withdraw from the case is belied by the factual allegations of the first and second amended complaint that an actual conflict existed. Specifically, Plaintiff alleges that at or near the time of Defendant's withdrawal from the case, Plaintiff informed Defendant that: "proper efforts for defense have not been used from your end;" Plaintiff had "no faith" in Defendant's ability to manage the litigation; Defendant had effectively breached the terms of its representation Agreement with Plaintiff; Defendant had been continually tardy in the delivery of work product; and Defendant's efforts had been sub-par. Plaintiff then alleges that Defendant manufactured any such conflict despite the admitted fundamental disagreement between the parties and Plaintiff's pronounced dissatisfaction with Defendant's representation. As the District Court's Order shows, the District Court considered

the communications between the parties in determining that good cause existed to allow Defendant to withdraw. [5:12-cv-69, D.E. 350].

Further, Plaintiff's theory underlying this claim is flawed. Plaintiff alleges the benefit to which it was entitled under the Agreement was "free legal services" from Defendant throughout the pendency of the underlying litigation. This is incorrect. The only benefit promised to Plaintiff under the Agreement was that during the course of Defendant's representation Plaintiff would not receive any legal expenses *from Ragsdale* in excess of available insurance coverage. Plaintiff does not allege it received any such expenses. The Agreement does not prohibit withdrawal by Defendant and does not address the payment of legal expenses in the event of Defendant's withdrawal. Accordingly, even assuming the veracity of Plaintiff's allegation that Defendant manufactured a basis for withdrawal, Plaintiff was not deprived of any benefit under the Agreement.

VI. AMENDMENT OF PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS FUTILE.

Plaintiff's amended claim for breach of fiduciary duty is substantively unchanged, other than the allegation Plaintiff is entitled to recover fees paid to other attorneys following Defendant's withdrawal. North Carolina law recognizes that claims arising out of an attorney's alleged failure to properly manage litigation and to provide competent representation sound in negligence, not breach of fiduciary duty. *See, e.g., Sharp v. Gailor*, 132 N.C. App. 213, 216-17, 510 S.E.2d 702, 704 (1999). Specifically, in *Sharp*, the Court held that allegations an attorney failed "to offer material evidence" in the client's favor, to investigate an opposing party's testifying expert witness and to ensure the presence of an expert witness "are nothing more than claims of ordinary legal malpractice and not claims for breach of fiduciary duty." *Id*.

Here, as in *Sharp*, Plaintiff's breach of fiduciary duty claim is premised on allegations Defendant failed to adequately manage the underlying litigation. As such, Plaintiff's second amended complaint fails to plausibly state a claim for breach of fiduciary duty and amendment of the claim is therefore futile.

Further, withdrawal by an attorney for a proper basis does not rise to the level of a breach of fiduciary duty. *Wilkins v. Safran*, 185 N.C. App. 668, 674, 649 S.E.2d 658, 663 (2007) ("Because defendants asserted a proper basis and moved to withdraw, defendants' conduct did not breach their fiduciary duty owed to plaintiff. The trial court properly granted defendants' motion for summary judgment on plaintiff's breach of fiduciary duty claim. This assignment of error is overruled."). As noted in Defendant's memorandum in support of its motion to dismiss the first amended complaint, this Court previously determined good cause existed for Defendant's withdrawal and allowed Defendant to withdraw from representation. [5:12-cv-69, D.E. 350]. The parties Agreement does not prohibit withdrawal or provide for the duration of Defendant's representation of Plaintiff. As such, Plaintiff's attempt to amend its claim for breach of fiduciary duty is futile.

VII. AMENDMENT TO ADD A CLAIM FOR CONSTRUCTIVE FRAUD IS FUTILE.

A prima facie showing of constructive fraud requires plaintiff to prove "that they and defendants were in a 'relation of trust and confidence ... [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). Plaintiff's evidence must prove defendants sought to benefit themselves or to take

advantage of the confidential relationship. *Barger*, 346 N.C. at 666, 488 S.E.2d at 224; *NationsBank v. Parker*, 140 N.C .App. 106, 114, 535 S.E.2d 597, 602 (2000).

Where an attorney does not seek or gain any personal benefit by withdrawing, there can be no claim for constructive fraud based on the withdrawal. *Wilkins*, 185 N.C. App. at 675, 649 S.E.2d at 663. Defendant gained no benefit from withdrawing from representation. Plaintiff attempts to allege Defendant gained a benefit by manufacturing a conflict in order to avoid continuing to represent Plaintiff for free. Contrary to Plaintiff's assertion, Defendant was not prohibited from withdrawing or required to defend Plaintiff free-of-charge throughout the pendency of the underlying litigation. Defendant therefore gained no benefit it did not already possess by withdrawing from representation. As such, amendment to include a claim for constructive fraud is futile.

## **CONCLUSION**

Plaintiff's Amended Complaint failed to plausibly allege facts to support a claim upon which relief can be granted. Despite having had the benefit of Defendant's arguments identifying the deficiencies in Plaintiff's pleadings, Plaintiff's proposed amendment fails to address these shortcomings. Thus, further amendment is futile. Defendant respectfully requests the Court deny Plaintiff's Second Motion to Amend Complaint.

**THIS THE 30TH DAY OF JULY, 2019.**

                          **HEDRICK GARDNER KINCHELOE & GAROFALO, LLP**

                          **/s/ JOSHUA D. NEIGHBORS**
                          **NC State Bar No. 44648**
                          **/s/ PATRICIA P. SHIELDS**
                          **NC State Bar No. 13005**
                          **Attorney for Defendant**
                          **4131 Parklake Avenue, Suite 300**
                          **Raleigh, NC  27612**
                          **PH:     (919) 832-9424**
                          **FAX:  (919) 832-9425**
                          **Email: jneighbors@hedrickgardner.com**

# CERTIFICATE OF SERVICE

I certify that on this date I electronically filed the foregoing Response to Plaintiff's Second Motion to Amend Complaint with the Clerk of US District Court, Eastern District of North Carolina, using the CM/ECF system which will send notification of the filing to the following:

Ashish Mahendru
Mahendru, P.C.
639 Heights Blvd.
Houston, TX 77007
713-571-1519
Fax: 713-651-0776
Email: amahendru@thelitigationgroup.com

Darren Andrew Braun
Mahendru PC
639 Heights Blvd
Houston, TX 77007
713-571-1519
Fax: 713-651-0776
Email: dbraun@thelitigationgroup.com

Nicholas J Lanza
Lanza Law Firm, PC
4950 Bissonnet St
Houston, TX 77401
713-432-9090
Fax: 713-668-6417

John M. Kirby
Law Offices of John M. Kirby
4801 GLENWOOD AVE. SUITE 200
Raleigh, NC 27612
919-861-9050
Fax: 919-390-0325
Email: john@legal-nc.com

THIS THE 30TH DAY OF JULY, 2019.

/s/ Joshua D. Neighbors
**N.C. State Bar No. 44648**
**Attorney for Defendant**