IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-238-FL

| | | |
|---|---|---|
| PRIME COMMUNICATIONS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RAGSDALE LIGGETT, PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 36) and plaintiff's motion to amend complaint (DE 46). The motions have been briefed fully and the issues raised are ripe for ruling. For the following reasons, the motions are granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on December 13, 2018, in the district court of Harris County, Texas, asserting claims for breach of contract and legal malpractice against defendant, a law firm that represented plaintiff in the course of prior litigation in this court, in the case Lorenzo v. Prime Communications, L.P., No. 5:12-CV-69-H (E.D.N.C.) ("Lorenzo" or the "underlying action"). Plaintiff seeks compensatory damages, fees paid in the underlying action, attorney's fees in this action, and declaratory judgment.

Defendant removed this action to the United States District Court for the Southern District of Texas, on January 28, 2019, and moved to dismiss the action for lack of personal jurisdiction, improper venue, and for failure to state a claim. With leave of court, plaintiff filed the operative

amended complaint on March 7, 2019, including additional factual allegations and an additional claim for breach of fiduciary duty. Defendant again moved to dismiss the action for lack of personal jurisdiction, improper venue, and for failure to state a claim. On June 6, 2019, the United States District Court for the Southern District of Texas granted in part and denied in part defendant's motion, transferring venue of the action to this court, and denying as moot the remaining motions to dismiss.

Defendant answered the amended complaint and filed the instant renewed motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), on June 20, 2019. In support of its motion, defendant relies upon a July 18, 2014, letter from defendant to plaintiff, and a June 21, 2017, order allowing defendant to withdraw in the underlying action.

Plaintiff filed the instant motion for leave to file second amended complaint on July 9, 2019, relying upon a proposed second amended complaint and redline, as well as email correspondence between counsel. Plaintiff seeks leave to add claims for constructive fraud and breach of duty of good faith and fair dealing, as well as additional factual allegations in support of all claims. Defendant responded in opposition thereto, on July 30, 2019.

In the meantime, after an extension, plaintiff responded in opposition to the instant motion to dismiss, relying upon the following documents: 1) transcript of initial conference on April 5, 2019, with the United States District Court for the Southern District of Texas, 2) a brief filed in the case Microsoft v. Baker, No 15-457 (S.Ct.), and 3) an article entitled Rule 23(f) Class Certification Appeals: Boon or Bust? Plaintiff replied in support of its motion for leave to amend on August 13, 2019, and defendant replied in support of its motion to dismiss on August 15, 2019.

Per the court's case management order, entered June 21, 2019, the deadline for mediation and discovery is January 30, 2020, and dispositive motions are due February 20, 2020.

**STATEMENT OF ALLEGED FACTS**

The facts alleged in the operative complaint[1] may be summarized as follows. Plaintiff "is an authorized AT&T retailer" with "stores across the United States," and with headquarters in Sugar Land, Texas. (Compl. ¶ 6). In February 2012, a group of current and former employees (the "Lorenzo plaintiffs") sued plaintiff in the underlying action in this court, asserting that plaintiff failed to pay wages in accordance with the Fair Standards Labor Act and the North Carolina Wage and Hour Act ("NCWHA"). Plaintiff hired defendant, a law firm based in Raleigh, North Carolina, to represent it in Lorenzo.

Between 2012 and 2017, in Lorenzo, defendant performed many lawsuit-related tasks, including deposition preparation, presenting plaintiff's witnesses for depositions, conducting strategy sessions with plaintiff's principals, meeting with plaintiff's principals regarding discovery, exchanging thousands of emails and making hundreds of phone calls with plaintiff's officers and employees. Plaintiff also engaged defendant to perform other legal matters, including advising plaintiff with respect to revisions that plaintiff made to its nationwide employee handbook.

On January 15, 2014, a magistrate judge granted, in part, the Lorenzo plaintiffs' motions to certify the collective wage action. The magistrate judge further recommended that the Lorenzo plaintiffs' motion to certify a class be granted in part. The presiding district court judge confirmed and adopted the magistrate judge's rulings and recommendations on March 24, 2014.

On April 10, 2014, defendant, on behalf of plaintiff, filed a petition with the United States Court of Appeals for the Fourth Circuit for permission to file an interlocutory appeal pursuant to

---

[1] All references henceforth to the "complaint" in the text or "Compl." in citations to the record are to the first amended complaint (DE 22), filed March 7, 2019, unless otherwise specified.

Fed. R. Civ. P. 23(f), of the court's March 24, 2014, order. However, this petition was filed three days late.[2] Defendant informed plaintiff of its error. "Until this point, a portion of [defendant's] fees were being paid by [plaintiff's] insurer, and the remainder was being paid by [plaintiff] [3]." (Compl. ¶ 13 n. 2).

On July 18, 2014, the parties entered into the following letter agreement (hereinafter, the "letter agreement"):

> As a matter of professional courtesy, Ragsdale Liggett, PLLC ("Ragsdale") agrees that any legal fees for this matter that exceed the available legal defense costs available under any policy of insurance applicable to this matter maintained by Prime Communications, L.P. ("Client") will be waived so that the Client does not incur any legal expense from Ragsdale in excess of all available insurance coverage. Ragsdale further agrees to continue to use its best efforts to defend the Client in this matter. In exchange for this accommodation, Prime agrees to waive and hold harmless Ragsdale from any acts or omissions that have may have [sic] occurred by any member or employee of Ragsdale during the defense of this matter.

(Compl. ¶ 14; DE 37-1).[4] This letter agreement was executed on behalf of defendant by William H. Pollock ("Pollock"), and on behalf of defendant by Faisal Charania, Esq., Vice President and Associate General Counsel of plaintiff. (DE 37-1 at 2).

According to the complaint, "[a]fter [defendant] entered into the [letter agreement], [defendant] seemingly performed as little work as possible to defend the [Lorenzo] lawsuit— perhaps not surprising, given [defendant's] economic disincentive to do so." (Compl. ¶ 15). In

---

[2] The United States Court of Appeals for the Fourth Circuit dismissed this appeal as untimely on November 24, 2015.

[3] In the quoted language in the complaint, plaintiff states "the remainder was being paid by Ragsdale" (Compl. ¶ 13, n. 2) (emphasis added). Based upon context, however, this appears to be a typographical error, and it appears that plaintiff alleges instead that the remainder was being paid by plaintiff, which is reflected in the text above. This correction, however, is not determinative of the court's analysis herein.

[4] Because this document "is integral to and explicitly relied on in the complaint," and its authenticity is not challenged by plaintiff, the court considers it in considering the instant motion to dismiss. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015).

4

April 2017, defendant "was preparing a very important motion for summary judgment as to the [Lorenzo plaintiffs'] collective-action claims." (Compl. ¶ 16). "On April 5, 2017—the day the motion was due for filing—[defendant] sent [plaintiff's] general counsel a 'final draft' of the motion that contained numerous errors and was far from final." (Id.). One of plaintiff's officers emailed defendant:

> Bill,
>
> This is the final draft [of the MSJ] you want me to review when the intro paragraph is wrong? Amie sent this at 2:30 p.m. CST the day it is due for filing (24 page) motion[.]
>
> . . . .
>
> As such, please be put on notice that proper efforts for defense have not been used from your end and we hereby demand adequate assurances per out [sic] contractual agreement that Ragsdale will provide the counsel agreed to. We consider these efforts a breach of contract.

(Id.). Plaintiff also emailed defendant on April 6, 2018 "about the status of important 'action items' that had [defendant] had let fall by the wayside." Id. "After [defendant] provided a non-response to his email, plaintiff's officer emailed again" on April 6, 2018:

> [W]e do not need details about reasons for [Ragsdale's] continued tardiness and delay going forward, we just need the materials as we have no faith in Ragsdale's ability to handle these matters without micromanagement. The dispositive motions yesterday once again set us back due to the sub-par efforts and we firmly believe your most meaningful opportunity to turn the case around, and make good on your promises, has been squandered. As such, we reiterate our belief that you have breached our contract by not using best efforts.

(Id.). "On April 12, 2017—less than two weeks from the due date for [plaintiff's] response to an important motion for summary judgment— [defendant] notified [plaintiff] that, notwithstanding the [letter agreement], [defendant] was withdrawing from the case due to 'a conflict of interest' that had arisen solely as a result of [plaintiff's] statement that [defendant's] efforts were subpar." (Compl. ¶ 17). Defendant "further stated that it would conduct no more work on the case, including

5

filing a response to the summary judgment or meeting any upcoming deadlines." (Id.). It also submitted the following letter to plaintiff's insurance company:

> This letter is to advise you of a conflict of interest that has arisen in our representation of your insured, Prime Communications, L.P., that will require our firm to withdraw from further representation of the insured in this matter.
>
> . . . .
>
> We received an email dated April 6, 2017 from [Prime Communications' Vice President and General Counsel], on which you were copied. In this email, it was alleged that our firm engaged in 'sub-par' efforts,' that the firm breached its contract of representation of Prime, and that the client had 'no faith' in our ability to handle this litigation. These allegations by the client of potential malpractice have created a conflict of interest so that our firm can no longer continue to represent Prime Communications in this matter.

(Id.). Plaintiff hired new counsel, for which it paid out of pocket for a portion of fees. (Compl. ¶ 19). According to the complaint, "[a]fter new counsel took over, it was discovered that [defendant]—amongst its many mistakes—had inexplicably missed [a] February 2017 deadline for [plaintiff] to designate a rebuttal expert and serve an expert report." (Compl. ¶ 20).

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Leave to amend must be freely given when justice so requires, and "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Amendment is futile "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

B.   Analysis

   1.   Timing of Motion to Dismiss

Plaintiff argues that the instant motion to dismiss should be denied at the outset because it is untimely, on the basis that it was not filed within 14 days after service of the amended complaint, under Rule 15(a)(3). This argument misses the mark for several reasons. First, Rule 15(a)(3) only references the time period for any "required response to an amended pleading." Here, defendant timely responded as required by that rule to the amended complaint by filing a motion to dismiss on March 21, 2019, while the suit was pending in the United States District Court for the Southern District of Texas.

Second, that court denied as "moot" the motion to dismiss upon its June 6, 2019, order to transfer venue to this court. (See Order (DE 32) at 8). Upon that denial of motion to dismiss, the operative rule governing timing of a responsive pleading was Rule 12(a)(4), which provides that "if the court denies the motion . . . the responsive pleading must be served within 14 days after notice of the court's action." Here, defendant filed an answer and its instant renewed motion to dismiss timely within that 14 day time period, on June 20, 2019.

7

Third, and in the alternative, a motion for "[f]ailure to state a claim upon which relief can be granted" may be filed at any time before trial, in the form of a motion for judgment on the pleadings under 12(c). See Fed. R. Civ. P. 12(h)(2). A motion for judgment on the pleadings is evaluated on the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Thus, the timing of defendant's motion to dismiss is not an impediment to this court's consideration of the issues raised by the motion.

2. Failure to State a Claim

Defendant argues the plaintiff fails to state a claim for every claim asserted in the complaint, and that proposed allegations and claims in the proposed second amended complaint are futile. Accordingly, the court evaluates each claim asserted based upon operative allegations and additional proposed allegations.

a. Breach of Contract

A claim for breach of contract requires a plaintiff to allege "the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497 (1968); see Cent. Tel. Co. of Virginia v. Sprint Commc'ns Co. of Virginia, 715 F.3d 501, 517 (4th Cir. 2013) (citing Birtha v. Stonemor, N. Carolina, LLC, 220 N.C. App. 286, 296 (2012)).

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the

four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976); see also Goodman v. Resolution Tr. Corp., 7 F.3d 1123, 1126 (4th Cir. 1993) ("If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law.").

Plaintiff claims that defendant breached the letter agreement in two respects: 1) by intentionally failing to use its best efforts to defend plaintiff in the underlying action, and 2) by repudiating the agreement in its entirety, upon withdrawal of representation. The court addresses each theory of relief in turn.

i. Best Efforts

Plaintiff asserts in the complaint that defendant failed to use its best efforts in the following respects in the complaint: 1) sending plaintiff a draft of a motion containing errors on its due date; and 2) failing to designate a rebuttal expert and serve an expert report. (Compl. ¶¶ 16, 20). In its proposed amended complaint, plaintiff asserts additionally that defendant failed to use its best efforts by: 3) failing to present evidence of plaintiff's policies to the court in summary judgment filings, 4) failing to properly plead plaintiff's defense of forfeiture and good faith, 5) failing to develop key evidence from the Lorenzo plaintiffs during their depositions on the Rule 23 claim; 6) failing to prepare plaintiff's witnesses adequately for their depositions; 7) failing to secure Angela Dunlap's deposition testimony; 8) failing to designate an expert on plaintiff's behalf; and 9) failing to depose plaintiff's expert. (Prop. Am. Compl. ¶ 43).

9

These alleged facts in the operative complaint, as well as those in the proposed amended complaint, when viewed in the light most favorable to plaintiff at the pleading stage of the case, are sufficient to give rise to a plausible inference that defendant did not "use its best efforts to defend" plaintiff in the Lorenzo case. (Compl. ¶ 14; DE 37-1). Indeed, defendant does not contend otherwise in seeking dismissal of this claim.

Defendant argues nonetheless that these allegations are insufficient to meet the element of damages resulting from the breach, where plaintiff does not point to any specific adverse outcome flowing from counsel's alleged failures to use best efforts. This argument is flawed in several respects. First, "[i]n a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." Bryan Builders Supply v. Midyette, 274 N.C. 264, 271 (1968). Therefore, where plaintiff alleges a breach of the obligation to use best efforts, plaintiff's breach of contract claim must proceed at least on the basis of nominal damages.

Second, "[f]or a breach of contract[,] the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." Perfecting Serv. Co. v. Prod. Dev. & Sales Co., 259 N.C. 400, 415 (1963). "[T]he damages recoverable are such as may reasonably be supposed to have been in the contemplation of the parties when the contract was made." Troitino v. Goodman, 225 N.C. 406, 412 (1945). Where it has been alleged that defendant failed to use its best efforts in multiple respects in defense of plaintiff, it can be inferred that the parties contemplated that a failure in this respect would cause damages to plaintiff. For example, it is reasonable to infer that plaintiff suffered losses, at least, measured by the expense of having to undertake efforts to address or correct those alleged errors. It is also reasonable to infer that plaintiff was damaged because its

defenses were not fully tested by allegedly defective counsel as the case proceeded, thus materially impacting its decision making as between settlement and trial.

Defendant suggests that the court should apply the same standard for contract damages as for the claim for legal malpractice, such that plaintiff must show an adverse outcome in the underlying case resulted from defendant's failure to use best efforts in defense. However, as set forth below, the requirements for establishing a legal malpractice claim are much different, and stricter, than those for establishing a breach of contract claim on the basis of the instant letter agreement.

In sum, plaintiff sufficiently alleges facts, both in the operative complaint and proposed second amended complaint, stating a claim for breach of the letter agreement and damages resulting from defendant's failure to use best efforts in its defense. Therefore, as to this portion of the breach of contract claim, defendant's motion to dismiss is denied and plaintiff's motion to amend complaint is granted.

      ii.      Withdrawal

Plaintiff asserts that defendant breached the letter agreement by withdrawing, thereby causing plaintiff to hire new counsel at its own expense. Defendant argues that plaintiff fails to state a claim on this basis because withdrawal from representation was not a breach of the parties' agreement.

Plaintiff has stated a claim for breach of contract due to the withdrawal by defendant, under the circumstances alleged. While the letter agreement does not prohibit defendant from withdrawing from representation, as defendant asserts, it does require plaintiff to "continue to use its best efforts to defend the Client in this matter." (Compl. ¶ 14; DE 37-1). Where the complaint alleges that defendant did not use its best efforts in defense, and where the failure to use best efforts

is alleged to have directly precipitated the conflict leading to withdrawal, (see, e.g., Compl. ¶¶ 15-17), it is reasonable to infer that defendant failed to use its best efforts in order to lead to the conflict that necessitated the withdrawal.

Defendant suggests that it did not breach the agreement because it never charged plaintiff in excess of insurance coverage. But, the fee limitation is only one component of the obligations in the letter agreement. Whether or not defendant charged plaintiff, it also agreed to "continue to use its best efforts to defend the Client in this matter." (Compl. ¶ 14; DE 37-1). Defendant also suggests that it had any no reason to expect any conflict, before plaintiff accused defendant of "sub par efforts." (Compl. ¶17; see Def's Reply (DE 55) at 4). This suggestion, however, does not attribute to plaintiff all reasonable inferences from the alleged facts in its favor. Given the timing of the conflict, including recent exhaustion of insurance coverage for the legal fees, (see, e.g., Compl. ¶ 18; Prop. Am. Compl. ¶ 17), it is reasonable to infer that defendant failed to use its best efforts in order to precipitate the conflict and withdrawal.

Thus, plaintiff sufficiently states a claim, both in the operative complaint and proposed second amended complaint, for breach of the letter agreement based upon defendant's withdrawal from representation. In sum, as to the breach of contract claim, defendant's motion to dismiss is denied and plaintiff's motion to amend complaint is granted.

        b.        Breach of Good Faith and Fair Dealing

Plaintiff seeks to add by amendment a claim for breach of duty of good faith and fair dealing, on the basis that defendant "manufactur[ed] a reason to 'withdraw' from the case, thereby depriving [plaintiff] of the benefits it was to receive" under the letter agreement. (Prop. Am. Compl. ¶ 31).

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228 (1985). "It is a basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 40 N.C. App. 743, 746 (1979). Where plaintiff states a claim for breach of contract, based upon defendant's alleged manufacturing of a conflict in order to withdraw, plaintiff also states an alternative claim of breach of implied duty of good faith on the same basis. Accordingly, plaintiff's motion to amend to add a claim for breach of duty of good faith and fair dealing is allowed.

        c.       Breach of Fiduciary Duty

Plaintiff claims that defendant breached its fiduciary duties to defendant on three grounds: 1) by convincing defendant to enter into the letter agreement despite it being against plaintiff's best interest, 2) by failing to inform defendant, in writing, of the need to obtain independent counsel to represent it with regard to negotiation and execution of that agreement, and 3) by "manufacturing a fake 'conflict' situation so that it could withdraw from the case." (Compl. ¶ 26). Plaintiff seeks to add a claim of constructive fraud based also on the third ground. (Prop. Am. Compl. ¶¶ 37-41).

A claim for breach of fiduciary duty in the context of an attorney-client relationship has the same elements as a claim of constructive fraud, under North Carolina law. In particular, a claim for both "is based on the taking advantage of a confidential relationship rather than a specific misrepresentation." King v. Bryant, 369 N.C. 451, 465 (2017); see Barger v. McCoy Hillard &

Parks, 346 N.C. 650, 666 (1997). In addition, "it must be shown that the defendant sought to benefit himself at the expense of the other party." Id.; see Barger, 346 N.C. at 666-67.

Facts alleged in the complaint do not give rise to a plausible inference that defendant breached fiduciary duties on the first and second grounds asserted. While plaintiff asserts that defendant convinced it to enter into the letter agreement against plaintiff's best interest, plaintiff does not allege facts permitting an inference that defendant "convinced" plaintiff to enter into the letter agreement, or that the agreement was not in plaintiff's best interest. Instead, the agreement on its face was offered as a "professional courtesy." (Compl. ¶ 14; see DE 37-1). Plaintiff benefited by not incurring any legal expense from defendant in excess of insurance coverage, and by ensuring that defendant would continue to use its best efforts in plaintiff's defense. (Id.). Likewise, the agreement was executed by plaintiff's general counsel. (DE 37-1 at 2). Accordingly, plaintiff has not demonstrated a breach of fiduciary duty on these grounds.

By contrast, plaintiff has stated a claim that defendant breached a fiduciary duty through its manufacturing of a conflict in order to withdraw from representation. As discussed above with respect to plaintiff's breach of contract claim, it is reasonable to infer from the facts and circumstances alleged that defendant "manufactur[ed] a fake conflict situation." (Compl. ¶ 26).

Defendant argues that plaintiff does not allege facts supporting an inference that defendant sought to benefit from the withdrawal at the expense of plaintiff. Defendant contends it did not gain a benefit by withdrawing that it did not already have under the terms of the letter agreement, because the letter agreement does not prohibit a withdrawal on the basis asserted. (Def's Opp. to M. to Amend (DE 51) at 17). As noted with the breach of contract claim, however, the letter agreement required defendant to use its best efforts to defend plaintiff. (Compl. ¶ 14). If, according to plaintiff's allegations, defendant had continued to use such best efforts, no conflict

14

would have arisen, and there would have been no basis to withdraw. (Id.). Thus, viewing the allegations in the light most favorable to plaintiff, defendant took advantage of plaintiff, and sought to benefit itself, by manufacturing a conflict and precipitating a withdraw.

In sum, plaintiff alleges a claim for breach of fiduciary duty based on defendant's withdrawal, but not on the basis that defendant convinced plaintiff to enter into the letter agreement without advice of independent counsel. Accordingly, defendant's motion to dismiss is granted in part and denied in part as to this claim. Plaintiff's motion for leave to amend to add a claim of constructive fraud on the same ground as the properly alleged claim for breach of fiduciary duty is granted.

        d.        Legal Malpractice

To state a claim for legal malpractice, plaintiff must allege: "(1) that the attorney breached the duties owed to his client, . . . and that [the attorney's] negligence (2) proximately caused (3) damage to the plaintiff." Rorrer v. Cooke, 313 N.C. 338, 355 (1985). In particular, plaintiff must allege "the loss would not have occurred but for the attorney's conduct," that is, "had [the attorney] done anything differently [the] plaintiff would have been successful in [its] litigation." Id. at 361. In sum, a plaintiff alleging legal malpractice must set forth "A Suit Within a Suit." Id.; see Formyduval v. Britt, 177 N.C. App. 654, 658 (2006) ("A plaintiff alleging a legal malpractice action must prove a 'case within a case,' meaning a showing of the viability and likelihood of success of the underlying action.").

Plaintiff asserts legal malpractice in part on the same grounds as it asserts breach of contract. In addition, plaintiff asserts legal malpractice on the basis of defendant's failure to timely appeal the class certification order. The court addresses each in turn below.

While the alleged failures on the part of defendant to use its "best efforts" to defend plaintiff are sufficient to state a claim for breach of contract, they are not sufficient to state a claim for legal malpractice. For example, plaintiff has not alleged that untimely provision of a draft summary judgment brief, or failure to point to evidence or arguments in summary judgment briefing, resulted in a loss or prevented a successful outcome in Lorenzo. Indeed, the court did not grant summary judgment in favor of the Lorenzo plaintiffs; rather, it reserved those claims for resolution at trial. Lorenzo, No. 5:12-CV-69-H (E.D.N.C.) (DE 486 at 13-14). Plaintiff also has chosen to into a settlement agreement with the Lorenzo plaintiffs in lieu of trial. See Lorenzo, No. 5:12-CV-69-H (E.D.N.C.) (DE 578, 581). Thus, while failure to use best efforts at the summary judgment stage of the case reasonably may have unnecessarily extended the case or hampered adversarial testing of plaintiff's defenses at that stage, it is not reasonable to infer that it resulted in a loss or prevented ultimate success in the case.

For the same reason, plaintiff fails to allege that failure to depose plaintiff's expert, designate a rebuttal expert, prepare or question additional witnesses, resulted in a loss or prevented plaintiff from prevailing on the merits. Again, while these failures reasonably may have caused plaintiff to lose benefit of its bargain in the letter agreement, plaintiff has not alleged plausibly that these failures resulted in a loss in Lorenzo or prevented a successful outcome. See Rorrer, 313 N.C. at 361.

In sum, plaintiff's malpractice claim based upon failure to use best efforts in defense must dismissed for failure to state a claim upon which relief can be granted, and leave to amend this claim must be denied as futile.

With respect to the remaining ground for legal malpractice – failure to timely appeal class certification order – the claim is barred by the statute of repose. "[A] cause of action for

malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: . . . . Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-15. Here, defendant failed to timely appeal the class certification order in April 2014. (Compl. ¶ 12). Plaintiff, however, commenced this action on December 13, 2018, more than four years from the last act giving rise to the cause of action on this ground. Therefore, the claim on this ground is time barred.

In any event, plaintiff has failed to allege it would have prevailed in the underlying litigation but for defendant's failure to appeal the class certification order. By failing to timely petition for interlocutory appeal of the class certification order plaintiff did not forego the right subsequently to appeal the order upon any final judgment, or to move to alter or amend the class certification order.

In sum, plaintiff fails to state a claim for legal malpractice, and plaintiff's motion for leave to amend this claim must be denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 36) is GRANTED IN PART and DENIED IN PART, and plaintiff's motion for leave to file second amended complaint (DE 46) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for legal malpractice and that part of its claim for breach of fiduciary duty premised upon entry into the letter agreement without independent counsel are DISMISSED. All other claims asserted in the complaint and in the proposed second amended complaint are allowed to proceed. Plaintiff is DIRECTED to file

its second amended complaint, omitting the dismissed claims as set forth herein, within **seven** days of the date of this order.

SO ORDERED, this the 31st day of October, 2019.

                                                                LOUISE W. FLANAGAN
                                                                United States District Judge