**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PRIME COMMUNICATIONS, L.P.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CAUSE NO. 5:19-cv-00238-FL** |
| | § | |
| **RAGSDALE LIGGETT, P.L.L.C.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

---

**PRIME COMMUNICATIONS, L.P.'S RESPONSE TO
RAGSDALE'S MOTION FOR ATTORNEY'S FEES**

---

Plaintiff Prime Communications, L.P. ("Prime Communications") files this Response to Ragsdale's Motion and Supplemental Motion for Attorney Fees [Dkts. 68 and 71].

# I.
## SUMMARY

1.     The Court should deny Ragsdale's request for attorney's fees.  The parties have had many collaborative meet-and-confers regarding discovery and resolved many of the issues between them.    Plaintiff has produced approximately 19,639 emails and documents, amounting to approximately **93,000** pages.  And even before Ragsdale filed its motion to compel, Plaintiff informed Ragsdale that it would be producing the additional documents desired by Ragsdale.

2. Separately, Ragsdale's request for fees is excessive and unreasonable. Ragsdale's attorneys spent over *30 hours* of partner and associate time—and a cost of approximately $6,300—drafting a simple motion to compel that, along with the simple memorandum in support of that motion—amounting to no more than 16 pages.

3. Accordingly, the Court should deny Ragsdale's motion for attorney's fees.

## II.
### BACKGROUND OF DISCOVERY ISSUES

4. Plaintiff made its initial document production on May 29, 2019, while the case was still pending in the Southern District of Texas. That production consisted of 13,565 discrete emails and documents totaling approximately 67,739 pages. Plaintiff produced its documents via a typical, industry-standard load-file format, neatly organized into images, text, and native folders, along with an accompanying load file.

5. Ragsdale also made its initial document production on or around May 29, 2019, producing a little over 23,600 pages of documents. However, Ragsdale produced these documents via approximately 20 individual PDF files consisting of about 1,000 pages apiece, making meaningful review of these documents unwieldy.

6. Accordingly, based on Plaintiff's request, Ragsdale made a subsequent production on or around June 20, 2019. This production—while now in a load-file-production format—did not include much of the all-important metadata associated with the documents. (*See* Mahendru Emails Regarding Missing Metadata; Ex. A). Again, this defect rendered meaningful review of the documents virtually impossible.

7.      In August 2019, Ragsdale finally re-produced its documents in a load-file format along with the associated metadata, but that production still had numerous issues.

8.      Plaintiff made its first supplemental document production on or around October 15, 2019, consisting of a little under 200 pages of Plaintiffs' counsels' fee invoices in the underlying *Lorenzo* Lawsuit.

9.      After the case was transferred to North Carolina in 2019, the parties first substantively conferred via both email and telephone regarding perceived deficiencies with each others' productions to date.  (*See* Dec. 19, 2019 Shields Email Regarding Discovery Conferral; Ex. B).  Ragsdale also sent Plaintiff a discovery conferral letter on December 27, 2019 outlining their position on Plaintiff's discovery objections.  However, Plaintiff's counsel, Ashish Mahendru, was out of the country on vacation from December 20, 2019 through January 6, 2020, which he had alerted Ragsdale's counsel of his travel plans on December 19, 2019. *Id.*

10.     On January 7, 2020, the day after Plaintiff's counsel returned from his out-of-county vacation, Ragsdale submitted a request for an informal teleconference regarding Ragsdale's discovery disputes with Plaintiff.  The parties had their call with Magistrate Judge Jones on January 17, 2020.  During this call, it was decided that Ms. Shields would attempt to narrow the issues further by providing more context as to what she believed was still missing from the production. Separately, as Plaintiff's counsel recalls, he agreed that emails and documents from the time period after Ragsdale's withdrawal in the *Lorenzo* lawsuit would certainly be produced, and that time would be needed for that production given its anticipated volume. Separately, Judge Jones allowed Ragsdale until

3

January 31, 2020 to file any motion to compel (otherwise the motion would have been due in mid-January, which was 30 days after Plaintiff served its discovery responses (*see* Dkt. 40, pp. 6-7)), but in all likelihood one would not be needed based on the parties' conference with Magistrate Judge Jones.

11.     After the call, Ragsdale sent Plaintiff a follow-up email regarding the discovery it was seeking, and why it was seeking it.  (*See* January 17, 2020 Patricia Shields' Email; Ex. C). The import of the continued discussions is borne out in this email. Ms. Shields first concedes that Plaintiff would *not* need to produce its email communications from or to Ragsdale, even though Ragsdale had specifically asked for those communications in its First Set of Requests for Production, and even though Plaintiff had already spent innumerable hours in attorney time reviewing and producing those approximately 60,000 pages of responsive documents. Of course, had Plaintiff known Ragsdale's position months before, it would have saved countless hours gathering, processing, and reviewing those documents, not to mention the numerous hours and thousands of dollars of attorney's fees Plaintiff spent to produce the very documents she now claimed she did not want.[1] Plaintiff's undertaking of such fruitless work—at Ragsdale's specific request—is sanction enough, and any award of attorney's fees on top would be unjust and rewarding Ragsdale for its imprecise requests.

12.     Plaintiff and Ragsdale had a follow-up phone call on January 24, 2020, where Plaintiff confirmed that emails and documents subsequent to Ragsdale's withdrawal

---

[1] In its First Set of RFPs, Ragsdale requested:  "DOCUMENTS and/or ESI regarding, reflecting, and/or evidencing COMMUNICATIONS between PRIME and RAGSDALE related to the [*Lorenzo*] LAWSUIT." [Dkt. 62-1.]

4

would be produced. Ragsdale's email also explained, for example, that it wanted documents to show how Plaintiff "corrected" any of Ragsdale's errors. If Plaintiff produced all communications and documents from after Ragsdale's withdrawal in the *Lorenzo* lawsuit (including communications between Plaintiff and Plaintiff's new counsel, and between Plaintiff's new counsel and opposing counsel), then such production would necessarily capture any documents showing "corrective" actions without the need for Plaintiff to make such a subjective determination on a document-by-document basis, which is why Plaintiff objected in the first place. Certainly, Plaintiff never stated that it was refusing to produce the documents Ragsdale requested. Given the length of Bradley Arant's (new counsel who took over for Ragsdale) representation of Plaintiff in the underlying case, there was a substantial amount of communications and documents involving Bradley—tens of thousands of pages worth. It would take Plaintiff significant time to review and process those additional documents for production.

13. Despite Plaintiff's position that it would produce the documents, Ragsdale went ahead and filed its motion to compel discovery [Dkt. 64] on January 31, 2020, ostensibly because that was the deadline set by Magistrate Judge Jones to do so, and because Ragsdale wanted to preserve its right to have that motion heard.

14. On or around January 27, 2020, Plaintiff submitted its own initial email request for an informal discovery conference with the Court regarding Plaintiff's discovery disputes with Plaintiff. Plaintiff submitted a more formal request for an informal teleconference on February 13, 2020. Later in the day on February 13, 2020, Ragsdale confirmed that it

was producing additional documents, and then requested that Plaintiff pull down the teleconference.  Plaintiff subsequently did.

15.     The next day, on February 14, 2020, Plaintiff—as it was nearing the end of its document-review process with regard to its lengthy supplemental production—informed Ragsdale that it would be producing those additional responsive documents and requested that Ragsdale "pull [its] motion to compel down[.]"  (*See* February 2020 Mahendru-Shields Emails Regarding Additional Prime Production; Ex. D).  Ragsdale's counsel, in line with the parties' collaborative efforts at resolving discovery disputes, responded that "[i]f [Plaintiff] produce[s] the documents we've requested, I'll be happy to withdraw the motion.  Send them to us, *and we'll review them and get back to you*."  *Id*.  (emphasis added).

16.     February 14, 2020 was also the deadline for Plaintiff to file its response to the motion to compel, which Plaintiff did not do because it believed that the parties' conferrals had mooted the motion.

17.     On or about February 18, 2020, Plaintiff finalized its supplemental production and produced an additional tranche of approximately 23,474 pages of emails and other documents, consisting mainly of communications in the underlying *Lorenzo* case between Plaintiff's new counsel, Bradley (who took over after Ragsdale's withdrawal) and either opposing counsel or Plaintiffs' employees.

18.     On February 21, 2020, Plaintiff also made a subsequent production of approximately 1,400 pages of emails and attachments, consisting mainly of more communications between Plaintiff and Plaintiff's counsel in the underlying *Lorenzo* case.

The overwhelming majority of these documents are routine, mundane correspondence attendant to litigation, which Plaintiff produced (as it had agreed to do as early as January 17, 2020) to limit the possibility of future discovery disputes.[2]

19.    After Plaintiff made its February 21, 2020 supplemental production, Plaintiff again asked Ragsdale to pull down its motion to compel. (*See* Feb. 21, 2020 Mahendru Email Regarding Pulling Motion Down; Ex. E).

20.    On February 20, 2020—and only after Plaintiff's counsel continued to press Ragsdale for the documents—Ragsdale itself produced a tranche of 660 additional responsive emails and documents, amounting to many thousands of pages. (*See* February Mahendru-Shields Emails Regarding Additional Productions and Discovery Objections; Ex. F) (Ms. Shields: "[W]e realized that one of the folders of documents that we intended to produce to you were not sent. That is a group of approximately 660 documents, I believe . . . you will get [those documents] later today.").

21.    Given the volume of recent productions, Ragsdale stated that it needed "additional time to review the documents you have produced before we take deposition," and asked if Plaintiff would join in the request. *Id.* Plaintiff, of course, agreed to Ragsdale's request.

22.    On February 24, 2020, the parties had a follow-up call to discuss the status of the each others' discovery disputes and document productions. Ragsdale—following up on

---

[2] Again, while Ragsdale previously stated in its follow-up January 17, 2020 email to Plaintiff that it did not need *every* communication by, between or with Plaintiff's new counsel—just the ones that apparently showed them trying to fix Ragsdale's alleged mistakes—such a subjective, email-by-email inquiry could have easily led to future issues, and so the most prudent thing was to give Ragsdale everything and let it decide the materiality of those emails for itself.

its February 20, 2020 email[3]—asked Plaintiff to confirm that Plaintiff was not withholding any documents on the basis of objections, and Plaintiff indeed confirmed that fact. (*See* Feb. 24, 2020 Mahendru Email; Ex. G) ("As discussed on the phone just now, [Plaintiff is] not withholding documents on the basis of objections"). Plaintiff's counsel left that phone call with the distinct impression that Ragsdale's motion to compel was indeed moot, and there was no need to respond to the motion. Of course, Ragsdale would need a significant amount of time to review what Plaintiff had produced, so there could be no further meaningful discussion until Ragsdale finished its review process. And given Plaintiff's position that it was not withholding documents and was awaiting any further clarification from Ragsdale on whether it believed any category of documents were missing, Plaintiff was not going to expend unnecessary attorney's fees in preparing a response to a moot motion to compel.

23.     Moreover, in tandem with Plaintiff's written confirmation that it was not withholding any documents on the basis of its objections, Plaintiff also stated that it had produced all the documents that Ragsdale wanted. *Id.* Plaintiff's counsel's statement was based on the fact that Plaintiffs' counsel had produced all relevant, responsive documents that it had captured from its document-collection efforts to date. Ragsdale responded that it would take it weeks to review what was produced. *Id.*

24.     Meanwhile, the parties submitted the Joint Motion to Extend Discovery Deadlines to give Ragsdale time to conduct that review in advance of depositions [Dkt. 65] (stating,

---

[3] Ragsdale had requested an email confirming that Plaintiff was not withholding documents on the basis of its written discovery objections. Importantly, Ragsdale requested this email as an *alternative* to Plaintiff amended its discovery responses to remove the objections.

Counsel for both parties need additional time to review the documents produced to prepare for and complete depositions in this matter. The parties have diligently engaged in discovery, but additional time is necessary to complete discovery.").

25.     Between February 24, 2020 and March 11, 2020, Plaintiff did not hear anything from Ragsdale regarding any additional categories of documents that Ragsdale believed were missing from Plaintiff's productions to date.

26.     On March 11, 2020, the Court's case manager emailed the parties and asked if Ragsdale's motion to compel still needed a ruling, given Plaintiff's additional document productions.  Plaintiff responded:

> Our position is that our document production resolved the issues in the motion, and we confirmed to [Ragsdale's] counsel that we were not withholding documents on the basis of objections. See attached email.
>
> We asked Ms. Shields to alert the Court of same and pull the motion down, but it does not appear that was done.

(*See* March 11, 2020 Mahendru Email; Ex. H).  Ragsdale's counsel, in turn, stated:  "We cannot confirm that all requested documents were produced.  We are still reviewing them, and our review is far from complete.  To date, however, I am not aware that any documents internal to Plaintiff have been produced."  (*See* March 11, 2020 Ms. Baird, Mahendru, and Shields Emails; Ex. I).

27.     This was the first time that Ragsdale informed Plaintiff that documents were allegedly still missing.  Plaintiff responded separately to Ragsdale:  "What do you mean documents by 'internal to Plaintiff'?"  *Id*.  Ragsdale responded:  "No emails, texts, etc

between any employees or managers of Prime. So far, we've seen communications with Bradley [Plaintiff's counsel in the *Lorenzo* case]." *Id*.

28.    At no point did Plaintiff refuse to produce these additional documents if, indeed, they were missing. As was clear from Plaintiff's conversations and emails with Ragsdale, Plaintiff had already agreed to produce all documents requested by Plaintiff, and to effectively pull down its written objections to Ragsdale's discovery. That is why Plaintiff kept asking Ragsdale to "pull down" the motion to compel: although there may be some residual issues[4] about certain un-captured documents, the substance of Ragsdale's motion was moot. In fact, believing the motion was moot, Plaintiff did not even file a response to Ragsdale's motion.

29.    After being notified for the first time about the missing internal communications, Plaintiff began investigating whether its productions did or did not contain the purely internal communications Plaintiff requested. Plaintiff and Ragsdale had multiple phone conferences regarding the issue. Ragsdale, as has been the practice all along, agreed to script out what it felt was missing. In turn, despite the stay at home orders and national, state, and local emergencies (and despite being a corporate client whose operations and employees have been substantially impacted), Plaintiff has diligently run searches for all communications again that Ms. Shields believes might exist and is in the process of de-duplicating against its already-massive 93,000 page production to determine if there are

---

[4] Ragsdale, too, had residual issues with its production. Although it had confirmed that it had produced all responsive documents, it, too, found and produced additional documents (*See, e.g.,* March 26, 2020 Shields Email About Privilege Log and Missing Email; Ex. J). These things happen in every case—especially in document-heavy cases involving tens of thousands of pages of produced documents by each side.

further documents that might be netted. And, Ragsdale has collaborated in providing Plaintiff more time in light of the emergencies. (*See* Mahendru Email Extending Deadline; Ex. K).

30.     On March 20, 2020, the Court entered an order granting Ragsdale's motion to compel.

31.     Plaintiff's additional document-collection process—which was already in progress at the time the Court signed its Order—has taken significant time given the pendency of the COVID-19 pandemic. Plaintiff's offices and store locations have been substantially disrupted, and its employees have been working from home during this time. So have Plaintiffs' counsel. Ragsdale has been gracious in accommodating Plaintiff's requests for extensions in collecting and producing these additional documents, and Plaintiff expects to begin producing these additional documents shortly.

### III.
### ARGUMENT

32.     This Court should deny Ragsdale's request for attorney's fees under Rule 37.

**A.      Given the Circumstances, an Award of Fees Would be "Unjust."**

33.     The detailed discovery and conferral history discussed in the background section above shows that an award of attorney's fees would be "unjust" in this case. Both parties have actively worked in good faith to narrow the scope of the discovery disputes.

34.     A court can decline to award attorney's fees with regard to a motion to compel if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). Courts routinely find the award of fees pursuant to a motion to compel

to be "unjust," often without any discussion at all. *See*, *e.g.*, *United States v. Meridian Senior Living, LLC*, 5:16-CV-410-BO, 2018 WL 5988345, at *5 (E.D.N.C. Nov. 14, 2018) (granting motion to compel, but concluding—without discussion—that it would be unjust to award fees); *Romfo v. Scottsdale Ins. Co.*, 5:17-CV-422-D, 2019 WL 1210105, at *5 (E.D.N.C. Mar. 13, 2019) (granting motion to compel, but also concluding—without discussion—that it would be unjust to award fees); *Progressive Se. Ins. Co. v. Arbormax Tree Serv., LLC*, 5:16-CV-662-BR, 2018 WL 4431320, at *9 (E.D.N.C. Sept. 17, 2018) (same).

35.     In this case, the award of fees would be "unjust." Well before the existence of any discovery disputes, Plaintiff had already produced over 67,000 pages of documents. This is not a case involving a party's abject refusal to participate in discovery.

36.     First, although Ragsdale claims it sent Plaintiff a discovery-conferral letter on December 27, 2020, it ignores the fact that Plaintiff's counsel, Mr. Mahendru, was out of the country on vacation from December 20, 2020 through January 6, 2020. On January 7, 2020—when Ragsdale first requested an informal teleconference with the Court—the parties had not had the chance to substantively speak yet.

37.     Additionally, after the parties' informal January 17, 2020 teleconference with Magistrate Judge Jones, the parties conferred further and Plaintiff stated that it would produce additional documents, which would—by the nature of the request—amount to many thousands of pages. While Ragsdale filed its motion to compel on January 31, 2020 (only approximately three weeks after Plaintiff's counsel returned from his out-of-

country trip), it presumably did so because that was the deadline set by Magistrate Judge Jones, and because it did not want to waive its right to urge that motion in the future.

38.     But even before Ragsdale filed its motion, Plaintiff had begun processing its supplemental production, which eventually amounted to over 20,000 pages and essentially satisfied all of Ragsdale's outstanding requests.  That is why it took until mid-February to actually complete the supplemental production.[5]

39.     Moreover, even before Plaintiff made its supplemental production, it asked Ragsdale to pull down its motion to compel given Plaintiff's imminent production. Ragsdale stated that it would be "happy" to pull down the motion if the production contained the requested documents, and stated that it would *"review [the documents] and get back to [Plaintiff]."  Id.  (See* February 2020 Mahendru-Shields Emails Regarding Additional Prime Production; Ex. D) (emphasis added).

40.     Again, this is in line with the fact that Ragsdale only filed its motion on January 31, 2020 to avoid missing the Court-extended deadline to do so.  A few days later, after Plaintiff had sent the supplemental production, Ragsdale stated it would need weeks to review the production. : "[i]t will take us weeks to review what you have produced.  We are not in the position to confirm that you have produced what we asked[.]"  (*See*  Feb. 24, 2020 Mahendru Email; Ex. G).  Of course, Plaintiff was standing by and ready to address any documents that Ragsdale found to be missing from the supplemental productions.  Equally, Plaintiff was not going to waste its clients resources or burden this Court with a response when it was working directly with Ragsdale to resolve any issues.

---

[5] Plaintiff's counsel is a small, two-lawyer firm.

13

That was in no way intended as a concession to the motion, but to the contrary, was intended to moot the motion, which is why Plaintiff's counsel informally informed Magistrate Judge Jones' office that it believed the motion was moot.

41.     But Ragsdale never brought up any subsequent issues with Plaintiff's production until March 11, 2020, when Ragsdale—replying to an email from the *Court*'s coordinator about whether the motion to compel was moot—stated for the first time that Plaintiff's supplemental production failed to include purely internal communications.    After requesting brief clarification from Ragsdale about what exactly it was talking about, Plaintiff began investigating and then collecting additional responsive documents for production.  Plaintiff had no issue producing these additional documents.

42.     Plaintiff has also made sure that Ragsdale would have ample opportunity to review Plaintiff's supplemental production well in advance of depositions, and twice agreed with Ragsdale to extend discovery deadlines to enable Ragsdale to do so.

43.     Finally, it would also be unjust to award Ragsdale fees regarding its discovery objections. The parties—pursuant to their discussions—had already resolved this issue well before the Court's ruling on the motion to compel.  Because Ragsdale was aware that Plaintiff had agreed to produce the requested documents, Plaintiff—on February 20, 2020 (30 days before the Court's Order)—requested Plaintiff to either (i) amend its discovery responses to remove those objections, **or** (ii) confirm in writing that it was not withholding  any documents on the basis of those objections:

> Finally, please either supplement your responses to our discovery, so that
> we can know whether you have produced all of the documents that we have

> requested, or [confirm whether you have] withheld any [documents] based
> on your objections.

(*See* Feb. 24, 2020 Mahendru Email; Ex. G). Plaintiff, in response, confirmed that it was

not withholding any documents on the basis of any of its objections, thereby mooting

Ragsdale's motion to compel: "As discussed on the phone just now, we are not

withholding documents on the basis of objections." *Id.* Ragsdale did not bring this issue

up again, and Plaintiff assumed the issue had been resolved. Under these circumstances,

it would be unjust to award fees based on these objections, which the parties resolved to

their satisfaction.[6]

44. As Defendant concedes in its motion, "there is no definition of what constitutes

good-faith," but it is "characterized as a meaningful opportunity to resolve . . .disputes."

This case is the hallmark of good-faith. There have been constant conferrals of discovery

issues, which did not necessitate court intervention. Ragsdale's motion to compel was

filed out of an abundance of caution, and if it had wanted an extension on the timing to

file its motion, Plaintiff would have readily granted it. Both Ragsdale and Plaintiff have

agreed to each other's requests for extensions.

45. Accordingly, the circumstances of this case show a good-faith attempt by Plaintiff

and Ragsdale to comply with their respective discovery obligations. No party is perfect.

---

[6] The mere fact that the Court ultimately concluded that Plaintiff's objections were boilerplate—after Plaintiff had already confirmed, as requested by Ragsdale, that it was not standing on those objections—should not serve as a basis for fees. *See ALDI Inc. v. Maraccini*, 5:19-CV-76-FL, 2019 WL 8051715, at *4 (E.D.N.C. May 15, 2019) (declining to award fees on basis that award would be "unjust," notwithstanding overruling of boilerplate objections).

An award of fees in this case would be unjust. The Court should therefore deny Ragsdale's request for attorney's fees.

**B.    Plaintiff's Initial Refusal to Produce Documents Was Not "Substantially Unjustified."**

46.    Ragsdale also seeks attorney's fees on the basis that Plaintiff produced additional documents after Ragsdale filed its motion to compel, even though Plaintiff subsequently produced those documents voluntarily without a Court order in an effort to resolve Plaintiffs' motion.  In Ragsdale's view, Plaintiff's production establishes that it had no basis to withhold the documents or object to their production in the first place.

47.    Under Rule 37(a)(5)(A), a nondisclosure, response, or objection is "substantially justified if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *CertusView Techs., LLC v. S&N Locating Services, LLC*, 2:13CV346, 2015 WL 13037421, at *2 (E.D. Va. Mar. 11, 2015); *citing Hare v. Comcast Cable Commc'ns Mgmt., LLC*, 554 Fed. Appx. 23, 24–25 (4th Cir. 2014).

48.    A sampling of the requests that Ragsdale discussed in its motion to compel show that Plaintiff's position as to the discovery satisfied the minimal threshold of having a "reasonable basis in law and fact."

49.    For example, Ragsdale's Request No. 8 from its Second Set of Discovery— discussed on page 8 of Ragsdale's Motion to Compel, requested "[c]opies of all documents, including, but not limited to, contracts, receipts, correspondence, emails, invoices, bills, letters, and/or recordings from you or to you, statements of account, checks, and any form of communication between Prime Communication, LP and Barbara

Costello, of Kaufman Borgeest & Ryan, LLP." But as Ragsdale concedes, only a small snippet of Plaintiff's communications with Ms. Costello (Prime's insurance carrier's discovery) would be relevant—why would routine fee-related communications with Mr. Costello pre-dating the dispute between Plaintiff and Ragsdale have any relevance to this case? That is why Ragsdale objected as "overbroad" to this request.

50. Additionally, in Request No. 9 in its Second Set, Ragsdale requested: "Copies of all documents, including, but not limited to, contracts, receipts, correspondence, emails, invoices, bills, letters, and/or recordings from you or to you, statements of account, and checks and any/all other documents reflecting or pertaining to the settlement of the Underlying Lawsuit." But many pleadings or communications in the case could "pertain" to settlement that would be largely irrelevant to any claims or defenses in this case. For example, a mundane email between Plaintiffs' counsel and the mediators' office regarding the time for mediation could "pertain" to settlement. The lengthy and numerous back-and-forth emails between Plaintiff's counsel and Lorenzo's counsel hashing out minor terms in the *Lorenzo* settlement agreement would "pertain" to settlement. Likewise, a motion to extend deadlines in the *Lorenzo* case due to the pending settlement agreement would "pertain" to settlement. Based on Ragsdale's own counsel's conferrals, Ragsdale did not necessarily want these documents, but these documents would nonetheless be responsive. For this reason, Plaintiff had objected to this request as overbroad.

51. And for Requests 1 through 3, Plaintiff objected because Ragsdale's request required Plaintiff to make a too-subjective determination as to whether or not certain

documents fell with the scope of the request. While the requests appeared to be looking for legal memorandums discussing potential liability or damages, the requests, as worded, could envelop far broader documents including pleadings and routine emails in the *Lorenzo* case (for example, the *Lorenzo* plaintiff's complaint requested specific monetary relief, which would make it responsive to Ragsdale's request for documents relating to Plaintiff's potential monetary liability).[7] But as explained above, Plaintiff's position— despite its objection—was just that it would give Ragsdale *everything*, and let Ragsdale determine which communications or documents supported the parties' claims or defenses.

52.     But, to reiterate the point discussed above, Plaintiff—although propounding the objections—had already informed Ragsdale prior to the filing of Ragsdale's motion that it would be producing the documents that Ragsdale wanted, and explicitly informed Ragsdale and the Court's office in writing (after the motion was filed) that Plaintiff was not standing on any of its objections. Nonetheless, although the Court subsequently overruled Plaintiff's objections, Plaintiff had a reasonable basis to assert the objection in the first place.

53.     Accordingly, the Court should decline to award fees.

**C.     Alternatively, Ragsdale's Request for over $6,000 in Attorney's Fees for a Simple, 10-Page Motion to Compel Is Patently Excessive and Unreasonable.**

---

[7] After the call with Judge Jones, Ragsdale-in its January 17, 2020 email to Plaintiff—stated that it was not looking for the pleadings filed in the underlying *Lorenzo* case. The fact that Ragsdale had to subsequently clarify its request shows that Plaintiff had a reasonable basis to assert objection in the first place.

18

54. In the alternative, in the event the Court find fees are warranted, the Court should significantly trim Ragsdale's requested fees. Ragsdale's motion to compel consisted of a simple, 5-page motion that recited basic background, an 11-page memorandum in support of that motion, and four easily-captured exhibits. It did not involve any difficult issues whatsoever.

55. Despite the simple nature of Ragsdale's motion to compel, Ragsdale seeks over $6,000 in attorney's fees based on over 30 hours of attorney time for filing the motion. This amount—as well as the time spent by Ragsdale—is patently excessive and unreasonable.

56. For example, Ragsdale's counsel's associate, Ms. Terry, spent a total of 23.5 hours on the motion and memorandum, including nearly **18 hours** of drafting time. (*See* Ms. Shields Affidavit, ¶13; Dkt. 68-2). Despite there being only basic law regarding discovery—much of which could have been easily captured from a single legal opinion or prior template—Ms. Terry spent another *six* hours conducting legal research in support of the motion. Ms. Terry's drafting and legal research time is unreasonable given the nature of the motion.[8]

57. Despite the fact that Ms. Terry herself spent 23.5 hours on the motion—which is excessive in and of itself—Ms. Shields testified that she spent *another* 8.9 hours revising the motion and accompanying memorandum. *Id*. at ¶14. There is simply no way an attorney of Ms. Shields' experience level should spend nearly nine hours revising a

---

[8] Plaintiff notes Ms. Shield's testimony that Ms. Terry is a new lawyer, which may explain why Ms. Terry spent the time she did on the motion. While Plaintiff of course understands the nature of being a new lawyer and the steep learning curve associated with that, it is not reasonable to force Plaintiff to foot the bill for that extra time.

simple, short motion to compel. An attorney of Ms. Shields' experience should have spent no more than 4 to 5 hours *total* for drafting and preparing the motion from start to finish. Ms. Terry's 23.5 hours—on top of Ms. Shield's addition nine hours—were totally unnecessary. (*See* Declaration of Ashish Mahendru; Ex. L)

58.　　Simply put, spending over 32 hours on a simple motion to compel—working out to approximately two hours of partner and associate time (and approximately $500) *per page*—is excessive and unreasonable. (*See* Declaration of Ashish Mahendru; Ex. L).

59.　　Additionally, Ms. Shield's testimony that her and Ms. Terry's collective time is akin to the time that Plaintiff's counsel spent drafting a Motion to Strike Expert Testimony in the underlying *Lorenzo* lawsuit is a wholly improper analogy. Certainly, drafting a motion to strike the expert testimony of the plaintiffs' expert in a complicated collective- and class-action lawsuit involving millions of dollars in alleged damages is a far cry from drafting a simple, short motion to compel. This Court should reject Ms. Shields' analogy.

60.　　While Plaintiff believes that Ragsdale is not entitled to any fees, it should—at most—be entitled to no more than between $1,000 and $1,500 given the short and simple nature of their motion.

## IV.
### CONCLUSION

61.　　Plaintiff Prime Communications, L.P. respectfully requests that the Court deny Ragsdale's request for attorney's fees, or, alternatively, grant them far less than what they

seek. The Court should grant Prime Communications any further relief to which it is entitled at law or equity.

Date: April 23, 2020

Respectfully submitted,

**MAHENDRU, P.C.**

By: _____
 Ashish Mahendru
 State Bar No. 00796980
 amahendru@thelitigationgroup.com
 Darren Braun
 State Bar No. 24082267
 dbraun@thelitigationgroup.com
 639 Heights Boulevard
 Houston, Texas 77007
 Telephone: (713) 571-1519
 Facsimile: (713) 651-0776


/s/ John M. Kirby
 John M. Kirby
 Law Offices of John M. Kirby, P.L.L.C.
 4801 Glenwood Ave., Ste. 200
 Raleigh, North Carolina 27612
 Telephone: 919-861-9050
 Facsimile: 919-390-0325
 john@legal-nc.com
 North Carolina Bar No. 20014

**ATTORNEYS FOR PLAINTIFF PRIME COMMUNICATIONS, L.P.**

## **CERTIFICATE OF SERVICE**

I certify that that on April 23, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I certify that all parties in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Ashish Mahendru